REVISED OPINION
MASON, ERNEST E. (Circuit Judge, Retired), Associate Judge.
This is an appeal from an order of The Florida Department of Insurance affirming The Florida Compensation Rating Bureau’s denial of Appellants’ request for relief. Appellants will hereinafter be referred to as Imperial and Adobe, respectively, and Appellees will be referred to as the Bureau and the Department, respectively.
The initial hearing below, held pursuant to the provisions of Section 627.291(2), Florida Statutes, involved review of the manner in which an experience modification was applied by the Bureau to the operations of Appellants for the policy year January 20, 1976-January 20, 1977. An experience modification factor is “a variation from the average premium charged by a particular *1032 insured’s industry which expresses the insured’s risk experience over a three-year period above or below the average.” See footnote 1, Florida Welding & Erection Service, Inc. v. American Mutual Insurance Company of Boston, 285 So.2d 386 (Fla. 1973). Appellants had requested that the Bureau apply an experience modification factor of 1.0 or, in the alternative, manual rates, to their operations. The Bureau denied this request, basing its denial on its Rule 11, Section III, Experience Rating Pian Manual-Workmen’s Compensation and Employers Liability Insurance, National Council of Compensation Insurance, hereinafter referred to as “Rule 11”. Appellants, petitioners below, petitioned the Department to review the decision of the Bureau and a hearing examiner was designated by the Department to conduct a hearing upon such petition. The hearing examiner heard all parties interested and made his recommendation to the Department that the decision of the Bureau be affirmed. In so doing, he held that Appellants did not qualify for manual rates or, in the alternative, for an experience modification factor of 1.0, because of the application of Rule 11 to their operations, citing as his reason that Imperial did not undergo a change in ownership interest such as to entitle it to the requested rates. The report, findings, conclusions and recommendations of the hearing examiner were adopted by the Department and the decision of the Bureau affirmed. Hence, this appeal.
Rule 11 of the Bureau as it was applied by the Bureau in denying the relief requested by Appellants provides, in part as so applied:
“11. Change of Control, Management, Name, Operations or Ownership.
(a) If there is a change in control, management, name or operations, not accompanied by any change in ownership interest, incurred experience shall be used in future ratings.
(b) If there is a change in ownership interest, either alone or accompanied by a change in control, management, name or operations . . incurred experience shall be used in future ratings.
Exception: Incurred experience shall not be used in the future ratings of the entity undergoing change:
i. when the entire ownership interest after the change had no ownership interest before the change, or
ii. when the collective ownership interest of all those having such an interest in the entity both before and after the change in ownership amounts to either:
(a) less than 33V3% of the ownership interest before the change, or
(b) less than 50% of the ownership interest after the change.
Note: In the application of this exception, an analysis shall be made to determine the individuals holding ownership interests in any entity, whether the entity be the one rated or any other entity in any way connected, directly or indirectly, in any chain of ownership with the risk being rated.
Ownership Interest:
(1) In any corporation shall be determined on the basis of the ownership of the issued voting stock of any such corporation . . . ”
A recitation of the salient .facts as disclosed before the hearing examiner with respect to the ownership interest in Appellant Imperial Corporation is appropriate to determine if the Bureau’s decision and that of the Department in affirming the same were correct.
Appellant Imperial is a Delaware corporation doing business in Florida and is a publicly owned company trading on the American Stock Exchange. Appellant Adobe is a corporation doing business in Florida which was acquired by Imperial as a wholly-owned subsidiary in 1971. In 1972 Adobe sold 25% of its common stock through a public offering and traded in over-the-counter market until September 30, 1978, when Adobe merged into Imperial and again became a wholly-owned subsidiary. Regal Wood Products, Inc. is a Florida corporation which, prior to October, 1975, *1033 was a wholly-owned subsidiary of Imperial. In the latter month Imperial sold Regal to certain of its principal officers, directors and employees. In return the purchasers surrendered 216,420 shares of Imperial’s common stock, which was then retired by Imperial. These shares represented 19.5% of the outstanding shares of Imperial, and the net effect of the sale was to reduce the outstanding common stock of Imperial from I,108,417 to 891,997 shares. In January, 1976, Imperial advised the Bureau that a change of ownership had taken place in Imperial the previous October through the sale of Regal and requested that, “In view of these changes (of ownership and management) . . . Imperial should not be subject to the incurred experience as presently promulgated by (Bureau's) . . . office.” This “incurred experience” sought to be removed in the consideration of rates to be fixed by the Bureau was the unfavorable loss experience of Regal. Based upon such request, the Bureau applied manual rates to the operations of Imperial for 1976 rather than the previous experience modification.
But upon further review, the Bureau in January, 1977, advised Imperial that no material change in ownership in Imperial had actually taken place, and since the continuation or elimination of experience modification was contingent upon ownership changes, or not, in accordance with its Rule II, the earlier application of manual rates was incorrect. The Bureau thereupon reinstated the experience modification as the basis for rates for both Imperial and Adobe for the period in question beginning in October, 1975.
The National Council on Compensation Insurance is a rating organization licensed by the Department to make rate filings in accordance with Chapter 627, Florida Statutes. The Bureau is a division of the Council and as such, it acted as a rating organization for the insurers of Appellants herein. Pursuant to its license from the Department, the Bureau made rate filings for workmen’s compensation pursuant to Section 627.091(4) and adopted rules for the governing of matters pursuant to the filing. Those rules, insofar as pertinent to this case, were incorporated in the manual relating to experience modification and were approved by the Department pursuant to Section 627.231, Florida Statutes. That section of the statute permits the Appellant, upon request, to obtain review by the Department of any rule upon written notice to the Bureau. Section 627.291(2), Florida Statutes, permits review upon written request of the manner in which any rating system has been applied to a particular insured.
It is well to note the difference between a manual rate and a rate based on experience modification factor. A manual rate is a rate set forth in a particular rating organization’s manual of rates, and is based on the experience of a particular industry or class of insureds as to risks or losses. An experience modification rate is one based on the experience of a particular insured as to such risks or losses over a given period of time as noted by the Supreme Court in Florida Welding & Erection Service, Inc., supra.
In their first point on appeal, Appellants complaint that the Bureau’s Rule 11 should not have been applied by it in determining the rate to be fixed for them because the same had not been properly promulgated and filed by the Department with the Department of State prior to the hearing below, as required by the Administrative Procedure Act (Chapter 120, F.S.). If this argument is valid, then we, as the first reviewing authority of agency action, have the jurisdiction and responsibility to review the issue even though, as here, the point as to the validity of the alleged rule was not raised below, either before the hearing examiner or the Department. 4245 Corporation, Mother’s Lounge, Inc., et al. v. Division of Beverage, 348 So.2d 934 (Fla.App.).
However, the rule complained of is not an “agency” rule subject to the strictures of Section 120.54 of the Administrative Procedure Act. Section 120.52(14) defines a rule as “each agency statement of general applicability that implements, inter *1034 prets. or prescribes law or policy . . . ” (underscoring emphasized). We reject the argument of Appellants that when Appellee Department approved and adopted the order of the hearing examiner, such order became an agency statement of the Department of general applicability which implemented or interpreted or prescribed law or policy. State v. Matthews Corporation, 358 So.2d 256 (Fla. DCA 1978); McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. DCA 1977). In adopting the hearing officer’s order, the Department was simply considering the reasonableness of the Bureau’s Rule 11 as applied by it to Appellants and the Department’s order did not, by such adoption, promulgate such rule for general application throughout the industry. Furthermore, the Bureau’s Rule 11 is no more than an internal rule or procedure of a private rating organization created by the Council for the purpose of making rate filings with the Department in accordance with Chapter 627, Florida Statutes. As subscribers to the Council, Appellants, if not satisfied by the rules of such Council’s rating bureau division, could have withdrawn from the Council and formed another rating organization more to their liking, thus removing themselves from the operation of the “Rule” to which they now object.
The “Rule” neither prescribes law nor policy, nor does it describe the procedure or practice, of an “agency” of the government of Florida.
The second and sixth points raised by Appellants are that Sections 627.221, F.S., and 627.291(2), F.S., are unconstitutional in that they constitute improper delegations of legislative authority forbidden by the Florida Constitution. We hold these points to be without merit by force of the reasoning of the Supreme Court of Florida in Florida Welding & Erection Service, Inc. v. American Mutual Insurance Company, 285 So.2d 386 (Fla.1973), supra.
Therefore, turning to the real issue as presented by the record herein, viz: was the Bureau’s rule reasonably applied to Appellants by it, and was there substantial competent evidence to sustain the order of the Department, we find that the rule was reasonably applied and that there was substantial competent evidence to sustain the Bureau’s action and the Department’s order approving the same. We therefore affirm.
Under the provisions of the rule, in order to be entitled to an experience modification factor of 1.0 or manual rates as requested by Imperial, it was necessary for it to show that at the time of Imperial’s application for such rates there had been a material change in ownership by the sale of Regal to certain of its former officers, directors and employees. Upon the sale of Regal to such purchasers, Imperial retired the 216,420 shares of its stock held by such purchasers, inasmuch as the consideration for such purchase was the shares of Imperial stock held by the purchasers. This left 891,997 shares in Imperial of the original 1,108,417 shares of issued stock. Bearing in mind that the test of ownership interest under the rule is based upon ownership of voting stock of the corporation, Imperial still held over 80% of the corporation’s stock after the Regal sale. Therefore, the hearing officer’s finding and conclusion that there was no change of ownership interest and that the proper basis for ratings for the period in question was incurred experience were based upon substantial competent evidence.
We find the other points argued to be without merit.
AFFIRMED.
McCORD and SHIVERS, JJ., concur.